UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| CHARLES F. FISHER, JR. | CIVIL ACTION NO. 15-cv-2344 |
| VERSUS | JUDGE HICKS |
| LONNIE NAIL, ET AL | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Charles Fisher ("Plaintiff") is a self-represented inmate who is housed at the David Wade Correctional Center. He was convicted of a disciplinary offense and sentenced to extended lockdown, where inmate possessions are limited. Plaintiff had items that were either not allowed in lockdown or were allowed only in limited numbers, so prison officials confiscated several items of his property. Plaintiff attempted several times to obtain the return of his property, but it appears that prison officials discarded or destroyed the property.

Plaintiff named several defendants and asserted a number of claims. Defendants earlier filed a motion to dismiss that resulted in the dismissal of claims including due process based on property loss, dissatisfaction with grievance rulings, violation of DOC policy, and the Eighth Amendment. The only claim that survived was one against Colonel Lonnie Nail for violation of the Equal Protection Clause. The claim was based on Plaintiff's allegation that Nail allowed prisoners from northern Louisiana, informants, and white prisoners to have their personal property stored when they were on extended

lockdown, while other prisoners were discriminated against by having their property taken and distributed to more favored prisoners. Docs. 41 and 56.

Now before the court is Lonnie Nail's Motion for Summary Judgment (Doc. 54). Nail seeks dismissal of the final claim against him on the grounds that Plaintiff did not exhaust his administrative remedies with respect to that claim. For the reasons that follow, it is recommended that Nail's motion be granted.

**Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; Hamilton v. Segue Software, Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**Relevant Facts**

As set forth in the prior Report and Recommendation, DOC policy 28A lists the kind and quantity of items an inmate may possess. It includes matters such as clothing, photo albums, electronic media, and magazines. The policy states that all items not listed or that exceed the quantities listed will be confiscated and "will be sent home at the offender's expense, given to charity or destroyed" pursuant to policy.

DOC policy 36 governs possessions by inmates in maximum custody (such as the extended lockdown to which Plaintiff was sentenced). The policy states that each prison shall establish an allowable property list for offenders housed in each level of maximum custody status. It adds: "Procedures shall also be developed for the storage and issuance of offender personal property not allowed or allowed in the different levels of maximum security." The record does not appear to include a copy of any such procedures in place at David Wade.

Plaintiff was found guilty of a rule infraction in May 2013 and sentenced to time in extended lockdown. Plaintiff appealed the finding and sentence. Officers inventoried his property and confiscated certain items, with the confiscation noted to be made per OPP #43 and/or over limit. The items confiscated included 30 magazines, a soap dish, six books, 11 cassette tapes, one pair of sweatpants, two pencils, a knit cap, and several photos. The form allowed the inmate to request the items either be destroyed or mailed home. Plaintiff declined destruction but did not provide an address for mailing, so a box was checked that directed the items be placed in "appropriate bin in confiscation room." Plaintiff made

several requests, written and oral, to learn the location of his property or obtain its return. He reached out to Colonel Nail and Warden Jerry Goodwin without success.

Plaintiff filed his first of two administrative grievances about his missing property in November 2013. He admitted in the grievance that he refused to sign the confiscation document, and he said he would not sign such papers until he could actually see his property. Plaintiff argued that prison officials were improperly applying the written policies and that policy 36 required the development of procedures for the storage of property while an inmate is in maximum custody status.

Warden Goodwin responded that the property was still in storage in the confiscation storage area, and he attached a copy of the confiscation sheet that listed the property. He stated that Plaintiff would not, however, be brought to the storage area to view his property. He could choose to mail the property home "or it will be disposed of accordingly" because the institution had limited storage space that made it not feasible to store all lockdown offenders' property. Plaintiff appealed, and DOC Secretary James LeBlanc determined that the warden's response to the grievance was appropriate.

Plaintiff's lockdown cell was shaken down in February 2014, and additional items were confiscated. Paperwork indicates that they were three magazines and two books deemed to be over the limit. Plaintiff wrote Colonel Nail and stated that four books were taken from him as allegedly over the limit. Plaintiff asked that Nail place his books to the side until he received a bed in general population, which he believed would happen soon. Plaintiff was returned to general population in April 2014, and he renewed his efforts to

get the return of his property. He wrote to or spoke with Nail and Goodwin without satisfaction.

Plaintiff then filed a second administrative remedy procedure and recounted his long history with regard to this issue. He disputed the administration's interpretation of the relevant policies and demanded the return of "all of my property." Deputy Warden Angie Huff provided the first-step response. She recited the provisions of the policies and said that Plaintiff had refused to provide postage and an address to mail the confiscated items home, so the property was disposed of according to policy.

Plaintiff requested review at the second step. He argued that it should be taken into consideration that he had been constantly appealing his disciplinary sentence for eight months and that it was unfair for the prison to store the property of some but not all prisoners who had property confiscated. Plaintiff said doing so was improper "favoritism or discrimination." He also renewed his argument that officials were misinterpreting their own policies. Secretary LeBlanc agreed with the first-step decision.

**Analysis**

Congress has commanded that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The statute's reference to actions "with respect to prison conditions" is interpreted broadly and includes those actions that allege the use of excessive force or denial of medical care. Porter v. Nussle, 122 S.Ct. 983 (2002).

The statute requires proper exhaustion in accordance with prison or jail procedures. Woodford v. Ngo, 126 S.Ct. 2378 (2006).

The level of detail required in a grievance is based on the prison's requirements, and not that of the federal statute. Jones v. Bock, 127 S.Ct. 910, 923 (2007). The grievance procedure for state prisoners is set forth in Louisiana Administrative Code, Title 22, Part I, § 325. It allows an offender to seek review "of a complaint which relates to any aspect of his incarceration" if informal methods do not resolve the issue. An inmate commences the administrative process by writing a letter to the warden in which he "briefly sets out the basis for his claim, and the relief sought." Plaintiff filed his grievances as a letter, which the rules permit. Some prisoners use a preprinted form provided by the prison that ask the prisoner to, "Describe Nature of Complaint (i.e. WHO, WHAT, WHEN, WHERE, and HOW)".

The Fifth Circuit in Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004) held that a grievance must provide administrators with a "fair opportunity under the circumstances to address the problem that will later form the basis of the suit." Id. at 522. The Fifth Circuit has continued to apply Johnson's "fair opportunity" standard after Jones v. Bock. See Zebrowski v. U.S. Fed. Bureau of Prisons, 558 Fed. App'x 355, 360 (5th Cir. 2014); Garcia-Comacho v. Maldonado, 243 Fed. Appx. 880 (5th Cir. 2007).

Plaintiff's grievances complained that prison officials were misinterpreting their own policies and were not treating him fairly. He complained in his first grievance that he should be afforded the same opportunity to keep his personal property as those prisoners who are "obviously favored" by officials and have been allowed to store their property.

Plaintiff also complained that it was "discrimination and favoritism" that the institution would not store all lockdown offenders' property. Officials repeatedly responded that storage space was limited, which required that some of the longer-stored property would eventually have to be discarded if an inmate did not provide an address to which it could be shipped. Plaintiff persistently refused to provide an address for shipping, so his property was, after several months in storage, discarded.

Nothing in either of Plaintiff's grievances, or his step-two appeals, allege that he was being treated differently because of his race or because he was not from north Louisiana or an informant. In Johnson, the Texas administrative requirements directed inmates to write briefly and clearly to provide specific information and facts about their grievance. A black homosexual prisoner complained that prison officials failed to protect him from repeated sexual assault. He presented administrative grievances and then filed suit against several defendants and on a number of theories. Some of his claims were deemed to have been satisfactorily exhausted, but his claim of race discrimination was not. His grievances nowhere stated that he was suffering racial discrimination and did not mention his race at all. The Fifth Circuit held that his grievances did not adequately alert prison officials to a race-related problem and allow them an opportunity to address it. The race discrimination claim was, therefore, dismissed. Johnson, 385 F.3d at 518.

Another example is found in Zebrowski, 558 Fed. Appx. at 360, where the grievance made vague references to "an act of cahoots of retaliation" but did not raise the retaliation claim that the prisoner raised in his judicial complaint. The Fifth Circuit concluded that the grievance did not give prison officials a fair opportunity to address the claim in the

lawsuit, so the district court's dismissal of the claim was affirmed. The Court also stated that it was irrelevant that the prisoner included his retaliation claim in a letter to a senator; the prisoner was required to exhaust his administrative remedies through the official administrative grievance procedure.

Plaintiff's equal protection claims against Nail should also be dismissed. The Louisiana grievance rules are not demanding with respect to detail, but Plaintiff did not give any hint that he was complaining that the rules were being applied to him differently, not because prison officials misunderstood or misapplied the rules, but because they were discriminating against Plaintiff based on race, geography, or informant status. The generic references to discrimination and unfairness, in the context of the grievances, was not adequate to fairly present the remaining claim against Lonnie Nail. Prison officials were not given a reasonable opportunity to investigate and respond to that sort of claim, so it was not properly exhausted.

**Conclusion**

Nail met his summary judgment burden of demonstrating that the evidence supports his defense of failure to exhaust administrative remedies, a defense that he raised in his answer. Doc. 17. The burden then shifted to Plaintiff to create a genuine dispute of material fact, and he did not do so. Plaintiff's response is not accompanied by any evidence. Plaintiff argues that he was not fully able to discern exactly what kind of discrimination was being applied to him at the time he filed his grievance, but that is not a lawful excuse for failure to exhaust. Summary judgment for Nail is required. The dismissal should be with prejudice to refiling the complaint as a pauper, considering the

heavy burden that unexhausted prisoner complaints place on the courts and society. <u>Fitch v. LA Dept. of Pub. Safety & Corr.</u>, 2009 WL 1076749, *3 (W.D. La. 2009).

Accordingly,

**IT IS RECOMMENDED** that Lonnie Nail's **Motion for Summary Judgment (Doc. 54)** be **granted** and that all claims against Nail be **dismissed with prejudice**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. <u>See Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 26th day of January, 2018.

Mark L. Hornsby
U.S. Magistrate Judge